1  John Heenan
   Bishop & Heenan Law Firm
2  1631 Zimmerman Trail
3  Billings, MT 59102
4  406-839-9091
   John@bishopandheenan.com
5

6  Timothy M. Bechtold
7  Bechtold Law Firm, P.L.L.C.
   PO Box 7051
8  Missoula, MT 59807
9  406-721-1435
10 tim@bechtoldlaw.net

FILED  SEP 2 8 2015

SHIRLEY E. FAUST, CLERK
By_____
                County

11

12 *Attorneys for Plaintiffs*

13

14        MONTANA FOURTH JUDICIAL DISTRICT COURT, MISSOULA COUNTY

15

16 TRACY STONE-MANNING, RICHARD        ) CAUSE NO. DV-15-1011
   MANNING,  and KRISTINE AKLAND,      ) DEPT. 3
17                                     ) JUDGE  John W. Larson
18            Plaintiffs,              )
      vs.                             )
19                                     )
20 VOLKSWAGEN GROUP OF AMERICA,        ) **COMPLAINT AND JURY DEMAND**
   INC.,                              )
21                                     )
22            Defendant.               )
23                                     )
24 _____)

25

26 Plaintiffs allege as follows:

27

28

1.  Since at least 2009, Defendant Volkswagen Group of America (VW) intentionally violated the laws of the United States and the regulations of the United States Environmental Protection Agency (EPA) by selling automobiles in the United States that had a sophisticated software algorithm in the engine control module. The purpose of the software algorithm, defined in the Clean Air Act as a "defeat device," was to detect when a car's engine was being tested for compliance with emissions standards, and switch the car to an operating mode that would enable the car to appear to pass vehicle emissions standards. At all times other than in emissions testing mode, the engine control module would suppress emission controls and switch the car's operating mode to emit up to forty times the quantity of nitrogen oxides allowed by federal emissions standards.

2.  Nitrogen oxides are highly reactive gases that contribute to ground-level ozone, fine particulate, and nitrogen dioxide pollution. Exposure to these pollutants is a recognized cause of respiratory illnesses.

3.  The EPA has established regulations with strict emissions standards, and every vehicle sold in the United States must meet these emissions

standards to help control air pollution.

4.  On September 18, 2015, the EPA sent VW a Notice of Violation informing VW that the EPA had discovered the defeat device in 2.0 liter diesel engines in at least the following diesel models of VW's vehicles (the "Violating Vehicles"): 2009-2015 VW Jetta; 2009-2015 VW Beetle; 2009-2015 VW Golf; 2014-2015 VW Passat; and 2009-2015 Audi A3.

5.  Discovery may reveal that additional vehicle models and model years are properly included as Violating Vehicles.

6.  Since VW introduced its 2.0L TDI Clean Diesel engine in 2008, VW has touted it as a "fantastic power train" that "gives very good fuel economy" that "is also good for the environment because it puts 25% less greenhouse gas emissions than what a gasoline engine would, . . . cuts out the particulate emissions by 90% and the emissions of nitrous oxide are cut by 95%, . . . [and is] clean enough to be certified in all 50 states." (Statement of Volkswagen Group of America, Inc.'s Chief Operating Officer Mark Barnes, to *The Business Insider*, October 9, 2009.)

7.  Mark Barnes did not add that the VW clean diesel vehicles were engineered to be able to detect when they were being tested and to switch the manner

in which the emissions system operated to be able to achieve those

reductions in nitrogen oxides.  Mark Barnes also did not disclose was that,

after circumventing the emissions laws of the United States, every one of

VW's clean diesel vehicles' emissions systems were programmed to run in a

model that would result in up to 40 times the allowable quantities of

nitrogen oxides being released into the atmosphere under normal operating

conditions.

8.   VW relied on this fraud to position itself as the market leader in automotive

diesel sales in the United States. According to VW's documents, VW had

captured 78% of the automotive diesel sales in the United States by 2013.

9.   VW also charged a premium for its Violating Vehicles, which VW marketed as

"CleanDiesel." The 2015 Jetta base S model has a MSRP of $18,780, for

example, while the 2015 Jetta TDI S CleanDiesel model has a MSRP of

$21,640, a premium of $2860.

10.  The EPA has directed VW to recall all the Violating Vehicles and repair them

to comply with emissions standards. The repair will cause substantial changes

in performance and efficiency in the Violating Vehicles, thus Plaintiffs'

vehicles will no longer perform as they did when purchased and as

advertised.

## JURISDICTION AND VENUE

11. Jurisdiction is proper in this Court because no Plaintiff seeks more than $75,000 in damages (inclusive of costs and attorney's fees) and all claims are based in Montana law.

12. Venue is proper in this Court because Plaintiff Kristine Akland is a resident of Missoula County and VW has sold Violating Vehicles in Missoula County.

## PARTIES

13. Plaintiffs Richard Manning and Tracy Stone-Manning are citizens of Montana and residents of Helena, Lewis & Clark County, Montana who purchased a 2013 Volkswagen Jetta TDI Sportwagen diesel from Bennett Motors in Great Falls, Montana.

14. Plaintiff Kristine Akland is a citizen of Montana and a resident of Missoula, Missoula County, Montana who purchased a 2015 Volkswagen Golf wagon on August 3, 2015 from Missoula Volkswagen in Missoula, Montana.

15. Each plaintiff purchased his vehicle, in part, because of the "CleanDiesel" system as advertised by VW that touted the cleanliness of the engine system for the environment and the efficiency and power and performance

of the engine system.

16. Defendant Volkswagen Group of America, Inc. is a New Jersey corporation with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171. At all times relevant to this lawsuit, VW manufactured, distributed, sold, leased, and warranted the Violating Vehicles under the Volkswagen and Audi brand names in the United States. VW and/or its agents designed, manufactured, and installed the CleanDiesel engine system in the Violating Vehicles. VW's corporate parent is Volkswagen Aktiengesellschaft, based in Wolfsburg, Niedersachsen, Federal Republic of Germany.

## TOLLING AND ESTOPPEL

17. Any applicable statute of limitation has been tolled by VW's knowledge, active concealment, and denial of the facts alleged in this Complaint. Plaintiffs could not have reasonably discovered the true, defective nature of the Violating Vehicles until shortly before this litigation commenced. VW is further estopped from relying on any statute of limitation because of its concealment of the defective nature of the Violating Vehicles and their engines.

# CLAIMS

## Count One

## Fraud by Concealment

18.  Plaintiffs incorporate by reference all preceding paragraphs.

19.  The nondisclosure, misrepresentations, and/or concealment of material facts by VW to Plaintiffs, as set forth above, were known, or through reasonable care should have been known, by VW to be false and material and were intended by VW to mislead Plaintiffs.

20.  VW intentionally concealed and suppressed material facts concerning the quality of the Violating Vehicles.

21.  VW engaged in a secret scheme to evade federal vehicle emissions standards by installing software designed to conceal its vehicles' emissions of the pollutant nitrogen oxide, which contributes to the creation of ozone and smog. The software installed on the vehicles at issue was designed nefariously to engage during emissions certification testing, such that the vehicles would show far lower emissions than when actually operating on the road. The result was what VW intended: vehicles passed emissions certifications by way of deliberately induced false readings. Apparently,

VW's deliberate, secret scheme resulted in noxious emissions from these vehicles at 40 times applicable standards.

22.  Plaintiffs reasonable relied upon VW's false representations. Plaintiffs had no way of knowing that VW's representations were false and misleading. VW's defeat device was a sophisticated software algorithm, and Plaintiffs could not detect VW's deception.

23.  VW had a duty to disclose these safety, quality, functionality, and reliability issues because it consistently marketed its Violating Vehicles as possessing certain performance and fuel economy characteristics and as being in compliance with all applicable federal and state emissions standards. VW marketed the Violating Vehicles as being "CleanDiesel." Once VW made representations to the public about safety, quality, functionality, and reliability, as well as about the performance and fuel economy characteristics of the "CleanDiesel" vehicles in particular, VW was under a duty to disclose these omitted facts, because where one does speak one must speak the whole truth and not conceal any facts which materially qualify those facts stated. One who volunteers information must be truthful, and the telling of a half-truth calculated to deceive is fraud.

24.   VW had a duty to disclose the emissions scheme it engaged in with respect

to the Violating Vehicles because knowledge of the scheme and its details

were known and/or accessible only to VW, because VW had exclusive

knowledge as to implementation and maintenance of its scheme, and

because VW knew the facts were not known to or reasonably discoverable

by Plaintiffs.

25.   These concealed and omitted facts were material because they directly

impact the safety, quality, functionality, reliability, and value of the

Violating Vehicles. Moreover, concealed and omitted facts were material

because they directly impact the value of the Violating Vehicles. Whether a

vehicle conforms to emissions standards and whether an automobile

manufacturer tells the truth about compliance with emissions standards

are material concerns to a consumer.

26.   VW actively concealed and/or suppressed these material facts, in whole or

in part, with the intent to induce Plaintiffs to purchase or lease Violating

Vehicles at a higher price that did not reflect the Violating Vehicles' true

value, and to pad and protect its profits and to avoid the perception that its

vehicles did not or could not comply with federal and state laws governing

clean air and emissions, which perception would hurt VW's image and cost VW money, and it did so at Plaintiffs' expense.

27. Plaintiffs were unaware of these omitted material facts that were actively concealed and/or suppressed, in whole or in part, by VW with the intent to induce Plaintiffs to purchase or lease the Violating Vehicles at a higher price that did not reflect the Violating Vehicles' true value.

28. If Plaintiffs had known of these concealed and/or suppressed material facts, they would not have acted as they did, in that they would not have purchased purportedly "clean" diesel cars manufactured by VW, and/or would not have continued to drive their heavily-polluting vehicles, or would have taken other affirmative steps in light of the information concealed from them. Plaintiffs' actions were justified. VW was in exclusive control of the material facts, and such facts were not known to the public or to Plaintiffs.

29. As a result of VW's conduct, Plaintiffs have been damaged because the value of their Violating Vehicles has diminished as a result of VW's fraudulent concealment of its scheme to circumvent federal emissions standards, which has harmed the Volkswagen and Audi brand names

associated with the Violating Vehicles.

30. Furthermore, based on information and belief, Plaintiffs anticipate that if and when VW is compelled to bring the Violating Vehicles into compliance with federal emissions standards, as indicated by the EPA Notice of Violation, the Violating Vehicles will no longer possess the performance and/or fuel economy characteristics they were represented to possess at the time of sale or lease.

31. VW wantonly, maliciously, oppressively deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' rights engaged in a systematic and intentional scheme to defraud consumers and federal regulators by circumventing the laws of the United States, and the state of Montana, by designing a defeat device in the form of a software algorithm whose sole purpose was to make it appear that the Violating Vehicles complied with federal and state emissions standards when, in fact, they exceeded such standards by as much as 40 times. In perpetrating this scheme, VW was able to secure a 78% share of the automotive diesel market in the United States by representing their "clean diesel" vehicles to have performance and fuel economy characteristics that would not be possible if the Violating

Vehicles complied with federal and state emissions standards, not to mention taking market share away from electric cars and cleaner burning hybrid and gasoline combustion cars by this fraud.

32. Based on information and belief, VW engaged in a course of conduct to ensure that employees, dealers, and agents did not reveal this scheme to regulators or consumers in order to facilitate its fraudulent scheme and enhance VW's reputation and that of the Violating Vehicles in order to sell more vehicles and to sell those vehicles at an inflated price.

33. VW's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

**Count Two**

**Montana Consumer Protection Act**

**MCA §30-14-101 et sequelae**

34. Plaintiffs incorporate by reference all preceding paragraphs.

35. The deceptive acts and practices of VW in concealing the true nature of the Violating Vehicles, as described in this Complaint, violates the Montana Consumer Protection Act.

**WHEREFORE**, Plaintiffs demand judgment against VW as follows:

1.    For rescission of the purchase of the Violating Vehicles, pursuant to MCA §28-2-1701 et seq.

2.    For exemplary and punitive damages for VW's fraudulent and malicious actions;

2.    For an award of attorney's fees and costs as provided by any applicable provision of law.

3.    For such other and further relief as the Court deems just and equitable.

### JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

DATED this 28th day of September, 2015.

Timothy M. Bechtold
BECHTOLD LAW FIRM, PLLC

John Heenan
BISHOP & HEENAN LAW FIRM

ATTORNEYS FOR PLAINTIFFS

By _____
Timothy M. Bechtold